FILED

JAN 2 7 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROTISH VIKASH SINGH,                          CV. 07-1906-PK

          Plaintiff,                         FINDINGS AND
                                           RECOMMENDATION

v.

STAN CZERNIAK, et al.,
               Defendants.

_____

PAPAK, Magistrate Judge:

      Plaintiff Rotish Singh, appearing pro se, asserts claims under 42 U.S.C. § 1983, alleging

that defendants violated his rights under the First, Eighth and Fourteenth Amendments to the

United States Constitution. Specifically, Singh alleges that defendants violated his right to

petition the government for redress of grievances and to due process when they placed him in an

Intensive Management Unit at the Oregon State Penitentiary. Although not set out as a separate

claim in his complaint, Singh also alleges that defendants subjected him to cruel and unusual

punishment.

Page 1 - FINDINGS AND RECOMMENDATION

Defendants' motion for summary judgment is now before the court, as is plaintiff's motion to compel. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. For the reasons discussed below, the defendants' motion for summary judgment should be granted. Singh's motion to compel should be denied as moot.

## STATEMENT OF FACTS

Plaintiff Rotish Singh is an inmate in the custody of the Oregon Department of Corrections. As a result of repeated rules violations, Singh has served the majority of his sentence in special housing units, as opposed to general inmate population. This case arises out of Singh's placement in the Intensive Management Unit (IMU) in December, 2005.

**I.    Oregon Department of Corrections Classification and Grievance Procedures**

The Oregon Department of Corrections identifies the security risks of prisoners according to a custody classification system. Or. Admin. R. 291-104-005. Under that system, an inmate is assigned a custody level of minimum, medium, close, or maximum. Prison officials determine the appropriate level by examining an inmate's public and institutional risk factors, including the time remaining on his sentence.

The Department of Corrections uses the custody classification system to determine the level of supervision each inmate requires. "Maximum" custody is the highest of the inmate supervision levels. An inmate classified as "maximum" is one who presents an extreme risk of escape, violence, and/or disruption to the safe and orderly operation of the institution. Maximum custody inmates are housed in one of several special housing units, including the IMU.

Prison officials assign an inmate to the IMU after a series of reviews. The Department has created a Special Population Management Committee to perform those reviews. Under

Page 2 - FINDINGS AND RECOMMENDATION

Oregon Administrative Rule 291-055-0019, when the department assigns an inmate to IMU status, the inmate receives a copy of the classification summary, along with a description of options for administrative review and an administrative review request form.  Department of Correction rules also provide that an inmate may obtain a review of a classification decision by completing the administrative review request form, specifying the person to whom the request is submitted and the reasons for the review request.  Or. Admin. R. 291-104-0035.

The Oregon Department of Corrections has a grievance procedure for inmate complaints.  An inmate may grieve "[a]ny oversight or error affecting an inmate."  Or. Admin. R. 291-109-0149(2)(a)(E).  An inmate grievance may request review of just one matter per form.  Or. Admin. R. 291-109-0140(1)(d).   An inmate may not grieve a matter when that matter is subject to a separate review process.  Or. Admin. R.  291-109-1049(2)(b)(B).

No evidence in the record indicates that placement in the IMU, by itself, affects an inmate's  good time credits or eligibility for parole.  Rather, sanctions for major violations of prison rules can include a recommendation for reduction in good time credits or for an extension of a parole release date.  Or. Admin. R. 291-105-0069.  An inmate who commits a rule violation may also be subject to review of their custody classification.  Or. Admin. R. 291-105-0066.  An inmate is entitled to a hearing on charges of major or minor violations, to receive notice of the hearing, and to speak on his or her own behalf.  Or. Admin. R. 291-105-0056.

## II.    Singh's Placement in the Intensive Management Unit

Singh was assigned to IMU housing on December 27, 2005 and remained there until July 26, 2006, when he was released to the general population.  Singh received a maximum security classification.  His assignment to the IMU came about after he assaulted another inmate, which

constituted a major rule violation, and a previous, lengthy misconduct history.   Upon his assignment to the IMU, Singh did not receive a copy of the classification summary, the description of his options for administrative review or an administrative review request form, as required by Rule 291-055-0019.

After several written communications to various Department of Corrections staff people seeking to obtain a copy of an administrative review form, Singh filed a grievance on January 25, 2006.  His grievance explained that he thought his due process rights had been violated because he did not receive a copy of an administrative review request form and because placement in IMU was cruel and unusual punishment.

While his grievance was still pending, Singh made several additional efforts to obtain an administrative review request form.  His counselor, defendant Buchholz, responded to these efforts by forwarding Singh's requests to the Classification Unit and to the Assistant Superintendent for Programs.  In addition, in June 2006, Singh received a letter from defendant Stan Czerniak, a Department of Corrections assistant director, stating that he had forwarded Singh's concerns to the Population Management Office.  In the meantime, Singh remained in IMU housing, suffered what he describes as a "mental breakdown," and received treatment for depression.

Although Singh received replies to his other inquiries, he did not receive a response to his grievance until June 2006, five months after he filed it.  The response denied the grievance on the ground that it included too many issues.  Singh did not re-file his grievance and was released from the IMU the following month.  In total, Singh spent six months in the IMU.

III.    **Conditions in the Intensive Management Unit**

Once an inmate is assigned to the IMU, there are four program levels to move through. Inmates arrive on the unit at Level Two. Inmates receive a handbook when they arrive in the IMU, which explains the rules governing their time there. Inmates are provided written criteria for level promotion and demotion while housed in the IMU. With clear behavior, an inmate can progress through the four levels and be released to the general population.

Inmates in the IMU receive basic necessities, including food, clothing, bedding, toiletries, heat, water, toilet, showers and exercise. Inmates eat their meals in their cells but may leave their cells to shower or exercise. During his time in the IMU, Singh was allowed 35 minutes outside of his cell per day to shower and exercise, five days per week.[1] The exercise yard has an uncovered area that allows inmates to be exposed to the outside elements. The Department provides health care and mental health treatment services to IMU inmates.

Cells within the IMU are lit with 32-watt fluorescent bulbs during the day. At night, 5-watt fluorescent bulbs remain on to allow staff to observe the inmates. Regardless of housing assignment, all inmates in the Oregon Department of Corrections may be observed 24 hours per day, seven days a week.

Inmates in the IMU can have authorized personal property, depending on their program levels. Authorized personal property includes letters, photographs, pen and paper, a radio, and legal, educational, religious and treatment reading materials. As an inmate moves to a higher level, he is authorized additional personal property. The Department stores the remainder of an

---

[1] Prison regulations provide that inmates are allowed forty minutes to shower and exercise per day, five days per week. Or. Admin. R. 291-055-0020.

inmate's personal property until the inmate transfers from the IMU.

Inmates in IMU housing have limited access to visitors. Inmates in the IMU are allowed time for one-hour visits with immediate family members and the number of visits increases as the inmate moves to a higher program level. At Level Two, inmates may have two visits per month. Inmates who maintain good behavior and achieve higher program levels may have additional visits. In addition, chaplains make the rounds on a weekly basis.

The Department of Corrections does not allow IMU inmates to use a telephone except for emergencies, legal matters, or other calls authorized by the unit manager. No personal phone calls are allowed other than for verified emergencies, such as the death or serious illness of an immediate family member.

The Department of Corrections also has disciplinary segregation and administrative segregation units in addition to the IMU. The restrictions in those units are similar to those imposed in the IMU. Prisoners in all of these units receive the same basic necessities, including access to medical and mental health treatment. Inmates in the IMU and other segregation all eat their meals in their cells and are allowed out of their cells for forty minutes, five days per week, to shower and/or exercise. Inmates in administrative or disciplinary segregation may receive visitors once per week, while, as noted, inmates in IMU, if they are on Level Two, may receive visitors twice a month.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary

judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995) (internal citation omitted). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## DISCUSSION

In 42 U.S.C. § 1983, Congress created a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Castle Rock v. Gonzales*, 545 U.S. 748, 755 (2005) (internal citation omitted). Thus, a plaintiff who asserts a § 1983 claim must establish: "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (internal citation omitted).

Individual government officials named as defendants in a § 1983 case may assert a qualified immunity defense. Qualified immunity shields government actors from a suit for damages if a reasonable official could have believed that his or her conduct was lawful, in light of clearly established law and the information possessed by the official. *Anderson v. Creighton*, 483 U.S. 635, 637-39, 641 (1987). In assessing whether an officer is entitled to qualified immunity, the court may inquire whether the facts alleged, taken in the light most favorable to the plaintiff, establish a constitutional violation or may instead examine whether the right at issue

was clearly established. *Pearson v. Callahan*, 555 U. S. _____, No. 07-751, slip op. at 10 (Jan. 21, 2009); *see also Saucier v. Katz*, 533 U.S. 194, 200-202 (2001).

Here, Singh alleges that defendants violated his right to petition the government for redress of grievances and to due process and that they subjected him to cruel and unusual punishment. Defendants move for summary judgment on the basis that they are entitled to qualified immunity. Defendants assert that Singh has failed to establish a constitutional violation. In the alternative, defendants claim that, if their conduct violated Singh's constitutional rights, those rights were not clearly established. I address whether Singh has established a constitutional violation.

## I.    Procedural Due Process

A claim for a violation of procedural due process requires 1) deprivation of a liberty or property interest and 2) denial of adequate procedural protections. *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001). Liberty interests may arise from the Due Process Clause itself or from state law or regulations. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* at 221-22 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Moreover, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). In addition, liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Courts have "no single standard" to measure whether a prison hardship is atypical and

significant but rather employ a "case by case, fact by fact consideration." *Ramirez*, 334 F.3d at

861 (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)).  As part of its analysis, a court

should consider: (1) the conditions of confinement; (2) the duration of the condition and the

degree of restraint imposed; and (3) whether the sanction will affect the duration of the prisoner's

sentence.  *Id.* at 861 (directing district court to consider the fact that inmate had been in

segregation for two years in determining whether confinement constituted significant and

atypical hardship); *see also Wilkinson*, 545 U.S. at 223-24 (holding that inmates' confinement in

highly-restrictive "supermax" prison implicates a liberty interest because the placement deprived

the inmate of "almost all human contact," was indefinite and disqualified the inmate from parole

consideration); *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003) (holding that

administrative segregation for disabled inmate in unit not equipped for a disabled person gave

rise to a liberty interest).

Here, defendants demonstrate that the conditions of Singh's confinement in the IMU are

similar to conditions in the Disciplinary Segregation Unit and the Administrative Segregation

Unit.  Moreover, Singh's IMU placement was not indefinite.  In addition, Singh presents no

evidence that his inmate placement in the IMU affected the duration of his sentence.  Thus, the

conditions in the IMU are not atypical, and do not implicate due process concerns.  *See Rincker*

*v. Or. Dep't of Corr.*, No. 04-6410, 2007 U.S. Dist. LEXIS 43216, at *21-22 (D. Or. June 12,

2007) (holding that placement in the IMU did not give rise to a liberty interest protected by due

process).

In light of my finding that Singh's placement in the IMU did not deprive him of a liberty

interest, I do not reach the second part of the due process inquiry: whether the state provided

adequate procedural protections. I note, however, that Singh asserts, and defendants do not

contest, that Singh did not receive an administrative review request form, as required by Oregon

Administrative Rule 291-055-0019. That failure, though troubling, does not amount to a

procedural due process violation, however, because Singh did not establish that he has a liberty

interest in avoiding IMU placement. Therefore, since Singh cannot establish a constitutional

violation occurred, the court should grant defendant's motion for summary judgment on plaintiff's

due process cause of action. Additionally, because Singh's motion to compel sought evidence

that would establish that defendants did not provide him with the administrative review request

form, that motion should be denied as moot.

## II.    First Amendment Right to Petition the Government

The Supreme Court has limited the protections afforded by the First Amendment's

Petition Clause to situations where an individual's associational or speech interests are also

implicated. *See McDonald v. Smith*, 472 U.S. 479, 482-85 (1985) (describing the right to

petition as "cut from the same cloth" as the other expressive rights embodied in the First

Amendment and holding that a petition clause claim must implicate some First Amendment

right); *see also WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372-373 (9th Cir. 1999) (holding that

an application for a land use permit did not implicate First Amendment rights). In addition, as

noted above, "inmates lack a separate constitutional entitlement to a specific prison grievance

procedure." *Ramirez*, 334 F.3d at 860; *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

Here, Singh alleges that the prison grievance coordinator, defendant Bales, deprived him

of his First Amendment right to petition the government. Specifically, the complaint states that

Bales failed to file and process Singh's grievance regarding the missing administrative review

Page 10 - FINDINGS AND RECOMMENDATION

form. Defendants, however, have produced evidence to demonstrate that Bales did respond to the grievance, albeit five months later. More importantly, Singh does not have a constitutional entitlement to the prison grievance procedure and has not presented any evidence that defendants' acts deprived him of his right to speech or association. Therefore, the court should grant defendants' motion for summary judgment on Singh's First Amendment cause of action.

## III.    Eighth Amendment

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "Thus, while conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Id.* (internal quotation omitted). In other words, restrictions "must not be devoid of legitimate penological purpose . . . , or contrary to evolving standards of decency that mark the progress of a maturing society." *Id.* (internal citation omitted).

"The protected liberty interest analysis does not match that of an Eighth Amendment analysis." *Serrano*, 345 F.3d at 1081. Rather, a prisoner claiming an Eighth Amendment violation must show: "(1) that the deprivation he suffered was objectively, sufficiently serious; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." *Morgan*, 465 F.3d at 1045 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Prison officials have a duty to ensure that inmates receive adequate shelter, food, clothing, sanitation, medical care and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Moreover, courts must consider "[t]he circumstances, nature, and duration of a

deprivation" of these necessities in determining whether a constitutional violation has occurred. *Id.* (noting that "more modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing").

Here, Singh's complaint does not set out a separate Eighth Amendment cause of action but nonetheless alleges that defendants subjected him to cruel and unusual punishment in several particulars. The complaint alleges that the lights in his IMU cell were on 24 hours per day and he was under constant supervision. Singh also alleges that defendants only allowed him 35 minutes to exercise and 10 minutes to shower per day, five days per week. Finally, Singh asserts that defendants required that he ate meals in his cell, did not permit him to use a telephone or his television and CD player, and only allowed one, hour-long, non-contact visit three times per month.

### A.    Lighting and Supervision

"Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." *Keenan*, 83 F.3d at 1090 (internal quotation omitted). Moreover, prison officials may violate the Eighth Amendment when, for no penological reason, they subject inmates to physical and psychological harm from living in constant illumination. *Id.* Here, however, defendants allege, and Singh does not dispute, that lights in the IMU cells are dimmed to five watts at night. Singh, moreover, does not allege or present any evidence that the lights deprived him of sleep or caused psychological harm. Although he asserts that he received treatment for depression while in the IMU, he does not attribute his depression to the lighting. As a result, I find that the lighting conditions on the unit did not violate the Eighth Amendment. *See Eccleston v. State of Oregon*, No. 03-6148, 2004 U.S. Dist. LEXIS 23248, at * 14-15 (D. Or.

Nov. 9, 2004) (finding dimmed lighting conditions in the IMU did not violate the Eighth Amendment).

### B.    Exercise

Courts have determined that exercise is one of the basic human necessities protected by the Eighth Amendment. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). Thus, "[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan*, 83 F.3d at 1089. Prison officials, however, do not violate the Eighth Amendment when they provide inmates an opportunity to exercise outside of their cells and out-of-doors five days a week. *See id.; LeMaire v. Maass*, 12 F.3d 1444, 1458 (9th Cir. 1993).

Here, the parties do not dispute that Singh had the opportunity to leave his cell for exercise for thirty-five minutes per day, five days per week. Moreover, defendants assert, and Singh does not dispute that the exercise yard allowed exposure to the outside elements. Therefore, I find that the IMU's exercise policy does not violate the Eighth Amendment.

### C.    Visits

The Supreme Court has held that a restriction on access to all visitors for a period of two years as punishment for multiple substance-abuse violations does not violate the Eighth Amendment. *Overton v. Bazzetta*, the 539 U.S. 126, 130, 136 (2003). The court noted, however, that "if the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations." *Id.*

Here, Singh could receive visits while he was housed in the IMU. Moreover, placement

in IMU is not permanent, and, in Singh's case, lasted for six months.  Thus, the IMU restrictions on visitation do not violate the Eighth Amendment.

**D.    Access to Other Inmates, Telephone, Television and CD Player**

As noted above, a deprivation must be sufficiently serious before it will trigger Eighth Amendment protections. "An institution's obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (internal citation omitted).  Here, during his stay in the IMU, Singh could use the phone in case of an emergency or for legal matters.  Moreover, while Singh had to eat meals in his cell, and had limits on the amount of personal items he could keep, those limits did not deprive him of basic human needs and were only temporary.  Accordingly, the limits on phone use, leaving the cell for meals, and personal property do not constitute Eighth Amendment violations.  *See Hoptowit*, 682 F.2d at 1246; *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982) (prisoners in maximum security have no right to unlimited telephone use).

**E.    Summary**

In summary, the conditions of confinement Singh complains of do not violate the Eighth Amendment.  As a result, the court should grant defendants' motion for summary judgment on plaintiff's Eight Amendment claims.  Moreover, after reading the evidence in the light most favorable to Singh, he has nonetheless failed to establish that defendants violated his constitutional rights in any respect.  Accordingly, defendants are entitled to qualified immunity on each of Singh's claims.

## CONCLUSION

The defendants' motion for summary judgment (#34) should be granted. Plaintiff's motion to compel (#42) should be denied as moot. A judgment should be prepared accordingly.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due February 10, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 27th day of January, 2009.

Honorable Paul Papak
United States Magistrate Judge